IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REPUBLIC STEEL,<br><br>Defendant. | Civil Action No. 1:24-cv-176 |

# COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, and acting on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint against Republic Steel and alleges as follows:

## NATURE OF ACTION

1. This is a civil action for penalties brought against Republic Steel for violations of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1251, et seq., at two of its industrial facilities, one located at 1807 E. 28th Street, Lorain, Ohio 44055 ("Lorain Facility") and a second at 2633 Eighth Street NE, Canton, Ohio 44704 ("Canton Facility") (collectively, "Facilities"). The United States seeks civil penalties for Republic Steel's past violations of its National Pollutant Discharge Elimination System ("NPDES") permits and for unpermitted discharge of pollutants from both Facilities.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and personal jurisdiction over Republic Steel under 28 U.S.C. §§ 1331, 1345, and CWA Section 309(b), 33 U.S.C. § 1319(b).

3. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), 1395, and CWA Section 309(b), 33 U.S.C. § 1319(b), because Republic Steel resides within this District and the violations that form the basis of this Complaint occurred at the Facilities located in the District. Venue is proper in the Eastern Division because the Lorain Facility, where the most amount of unpermitted discharge occurred, resides within the Division.

## NOTICE

4. The United States provided notice of this action to the State of Ohio as required by CWA Section 309(b), 33 U.S.C. § 1319(b).

## THE DEFENDANT

5. Defendant Republic Steel is a Delaware company with headquarters located in Canton, Ohio. Republic Steel owns and operates the Facilities in Lorain and Canton, Ohio.

6. Prior to filing this Complaint, Republic Steel idled and then permanently shut down the Canton Facility and idled indefinitely the Lorain Facility.

7. Defendant is a "person" within the meaning of CWA Section 311(a)(7) and 502(5), 33 U.S.C. §§ 1321(a)(7) and 1362(5), and 40 C.F.R. § 122.2.

## **STATUTORY BACKGROUND**

### **NPDES Permits**

8. CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source to the waters of the United States except as authorized by, and in compliance with, CWA Section 402, 33 U.S.C. § 1342.

9. CWA Section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

10. CWA Section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" as "spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."

11. CWA Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "waters of the United States, including territorial seas."

12. CWA Section 502(14), 33 U.S.C. § 1362(14), defines "point source" as "any discernible, confined and discrete conveyance, including, but not limited to any pipe, ditch, channel, tunnel, [or] conduit . . . from which pollutants are or may be discharged."

13. CWA Section 402(a), 33 U.S.C. § 1342(a), provides that EPA may issue an NPDES permit that authorizes the discharge of any pollutant into navigable waters of the United States, upon the condition that such discharge will meet certain specific requirements of the CWA or such other conditions as EPA determines necessary to carry out the provisions of the CWA. In addition, EPA may prescribe conditions pertaining to data and information collection, reporting, and such other requirements as deemed appropriate.

14. CWA Section 402(b), 33 U.S.C. § 1342(b), provides that a state may establish and administer its own permit program, and, after EPA authorizes the state's program, it may also issue NPDES permits. The State of Ohio requested approval from EPA to administer its own permit program for discharges into navigable waters within Ohio, and such approval was granted by EPA on March 11, 1974. 39 Fed. Reg. 26,061 (July 16, 1974).

15. NPDES permits establish "effluent limitations," which are defined as "any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from the point sources into navigable waters." 33 U.S.C. § 1362(11).

16. Effluent limitations can be numeric effluent limitations, which prohibit a facility from exceeding concentration or mass-based limits on pollutants in a discharge into receiving waterbodies. Pollutants are subject to different types of numeric effluent limitations, including daily maximum, daily minimum, and monthly average limits.

## Issuance of Administrative Orders Under the CWA

17. CWA Section 309(a)(3), 33 U.S.C. § 1319(a)(3), provides that whenever EPA finds a person in violation of certain CWA requirements – including CWA Section 301(a), 33 U.S.C. § 1311(a) – EPA may issue an order requiring that person to comply with the relevant provisions of the CWA.

## CWA Enforcement Authority

18. CWA Section 309(b), 33 U.S.C. § 1319(b), authorizes EPA to commence a civil action for appropriate relief for any violation actionable under CWA Section 309(a), 33 U.S.C. § 1319(a), including violation of an NPDES permit and for any unpermitted discharge.

19. CWA Section 309(d), 33 U.S.C. § 1319(d), as amended by the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461; the Federal Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701; and 40 C.F.R. § 19.4, provides that any person who violates CWA Section 301, 33 U.S.C. § 1311, is subject to a civil penalty of up to $66,712 per day for each violation occurring on or after November 3, 2015.

## FACTUAL BACKGROUND

### The Facilities' NPDES Permits

20. The Ohio Environmental Protection Agency ("Ohio EPA") issued Republic Steel two NPDES permits that allowed the Canton and Lorain Facilities to discharge industrial wastewater to the East Branch of Nimishillen Creek and the Black River, respectively.

21. The Canton Facility's permit, No. OH0006912, ("Canton Permit") sets daily and monthly maximum effluent limits for the following relevant pollutants from Outfall 010: oil and grease, selenium, zinc, lead, residual chlorine, total suspended solids, mercury, pH, and toxicity. The Canton Permit also requires certain operational controls and monitoring and sampling schedules and procedures, including daily 24-hour flow monitoring at Outfall 010 and Internal Monitoring Station 601, proper flow measuring device usage, accurate flow reporting, composite sampling, and efficient operation of all treatment or control facilities. The Canton Permit then requires Republic Steel to report violations to Ohio EPA and maintain and update a Storm Water Pollution Prevention Plan ("SWPPP").

22. The Lorain Facility's permit, No. OH0001562, ("Lorain Permit") sets monthly and daily maximum and minimum effluent limits for the following relevant pollutants from Outfalls 002, 003, 005, and 604: oil and grease, residual chlorine, mercury, and pH. The Lorain

Permit also requires certain and monitoring and sampling schedules and procedures, including daily 24-hour flow monitoring at Outfalls 002, 003, 005, and 604.

### EPA Inspections and Enforcement

23. From May 2017 through March 2023, in certified discharge monitoring reports ("DMRs") for the Canton Facility, Republic Steel self-reported a total of 89 NPDES permit effluent limit exceedances from Outfall 010, including exceedances of: (i) the monthly maximum limits for lead, selenium, mercury, and toxicity; and (ii) the daily maximums for pH, residual chlorine, oil and grease, lead, zinc, and total suspended solids.

24. From May 2017 through March 2023, in DMRs for the Lorain Facility, Republic Steel self-reported a total of 115 NPDES permit effluent limit exceedances from Outfalls 002, 003, 005, and 604, including exceedances of: (i) the monthly maximum limits for residual chlorine and mercury; and (ii) the daily maximums for pH, chlorine, and oil and grease and the daily minimum for pH.

25. On August 27 and September 25–26, 2019, EPA conducted inspections of the Canton Facility and observed additional NPDES permit violations for flow monitoring, operations and maintenance, reporting, and the contents of the SWPPP, and EPA identified a source of unpermitted discharges from the facility.

    a. Regarding monitoring, EPA determined that Republic Steel was routinely failing to record actual 24-hour flow on a daily basis for Outfall 010 and Internal Monitoring Station 601, as required by the Canton Permit. On the day of inspection, EPA observed wastewater twice surge and overflow beyond the capacity of Internal Monitoring Station 601. Wastewater from Internal Monitoring Station 601 flows to Outfall 010. Because wastewater flowed over the monitoring station's capacity, Republic

Steel could not have accurately measured or reported the total amount of wastewater that flowed through Internal Monitoring Station 601, as required by the Canton Permit. EPA also determined that the primary flow measuring device for Outfall 010 had been broken for at least two months and was therefore not providing the required 24-hour daily flow monitoring. Based on a review of records, EPA found that Republic Steel reported that there was no flow every day of July 2019 from Outfall 010, despite daily flow being reported from Internal Monitoring Station 601 that lead to Outfall 010 through the entire month. Republic Steel also reported only estimated flow from Internal Monitoring Station 601 from June 25–29, 2019.

      b.      Regarding operations and maintenance, EPA identified that several of the Canton Facility's water treatment facilities were not being maintained in good working order. Specifically, EPA found oil sheen on the surface of the water quality control center and observed vegetation build-up that interfered with flow through the control center.

      c.      Regarding reporting, EPA observed that Republic Steel had failed to report to Ohio EPA within 30 days of exceeding the effluent copper concentration at Outfall 003. The Canton Permit requires such reporting when the copper preliminary effluent limit is above a certain daily or monthly maximum. Upon review of discharge data, EPA observed that Republic Steel exceeded the average copper concentration limit for six months from June to November 2017 and from December 2018 through May 2019, but Republic Steel had only notified Ohio EPA in June and August 2017, December 2018, and March 2019.

   d.  Regarding the SWPPP, EPA found that it failed to contain all the required components to address maintenance of best management practices, housekeeping, and spill management and response, and failed to identify all outfalls at the facility.

   e.  Finally, during the August inspection, EPA identified a source of unpermitted discharges from the facility. EPA noted that Republic Steel sprayed water over the electric arc furnace slag to cool it off and reduce dust. EPA observed the water then flow into a nearby storm water catch basin. Upon information and belief, the storm water catch basin flows into the East Branch of Nimishillen Creek. The Canton Permit did not provide for such a discharge, and Ohio EPA was unaware of the discharge. When EPA returned for inspections in September, EPA observed the same unpermitted discharge continuing.

26. Based on these violations, EPA initially issued Republic Steel two Administrative Orders on Consent ("AOC"), one issued in March 2020 for the Canton Facility and one in June 2021 for the Lorain Facility.

27. The Canton Facility AOC required Republic Steel to eliminate all unauthorized discharges, submit a plan for correcting its effluent limit violations, increase monitoring and reporting in compliance with its permit, and submit a stormwater corrective action plan.

28. The Lorain Facility AOC required Republic Steel to submit for EPA approval a plan for compliance with its NPDES permit effluent limits and to report quarterly on the status of its compliance efforts and any additional exceedances.

29. In June 2019, Republic Steel reported to Ohio EPA that oil sheen was discharging from the Lorain Facility to the Black River. Ohio EPA inspected the Lorain Facility and observed a pump from within the facility was causing oil to be discharged into a storm sewer and

then directly into the Black River from an established but unpermitted outfall. The Lorain Permit did not authorize this discharge.

30. In April 2022, EPA reinspected the Lorain Facility and observed that the Facility had continued to discharge from the unauthorized outfall into the Black River. EPA noted the outfall was constructed but not identified in the Lorain Permit and the outfall was discharging continuously at a rate of approximately 12,200 gallons per day. EPA sampled the discharge and identified high pH and chlorinated liquids.

31. EPA's inspection also revealed that there was no flow measurement device at Outfalls 002, 003, 005, and 605. Lorain Permit Part I.A requires 24-hour flow monitoring at each outfall. EPA sampled those outfalls and found residual chlorine being discharged from each. Lorain Permit Part I.A. prohibits discharging residual chlorine from any outfall during the months of October through May. EPA also determined that all composite samples were time-proportioned. Lorain Permit Part I.A and II.G require composite samples to be collected as flow-proportioned composite samples. Without flow measurement devices, EPA determined that Republic Steel was unable to collect flow-proportioned composite samples.

32. In June 2022, EPA issued a second AOC for the Lorain Facility requiring that Republic Steel eliminate all unauthorized discharge, submit a report to EPA documenting its actions to eliminate the unauthorized discharge, and implement a monitoring regime at all required outfalls.

**The Facility Operations and the New NPDES Permits**

33. Republic Steel has idled the Lorain Facility since around March 2016, though some portions of the Lorain Facility operated briefly in 2018. The Lorain Facility maintained its NPDES permit and continued discharging despite being idled because it continues to operate groundwater pumps and collects stormwater that makes contact with unused but still contaminated machinery at the site.

34. Republic Steel obtained an updated NPDES permit from Ohio EPA setting effluent limits related to expected discharges at the Lorain Facility when the facility is idle.

35. Upon information and belief, the idled Lorain Facility will not discharge process wastewater associated with active industrial operations; however, Outfalls 002 and 005 will continue to discharge absent active industrial use as a result of storm events, groundwater infiltration, and pumping of water to avoid damage to equipment.

36. In August 2023, Republic Steel idled the Canton Facility and in September 2023, Republic Steel announced it would be permanently shutting down the Canton Facility.

37. In November 2023, Ohio EPA submitted for public comment a renewal NPDES permit for the Canton Facility that includes effluent limits associated with the Canton Facility's permanent closure.

38. Upon information and belief, the Canton Facility will no longer discharge process wastewater associated with active industrial operations; however, Outfall 010 and stormwater outfalls will continue to discharge absent any active industrial use as a result of storm events, groundwater infiltration, and pumping of water to avoid damage to equipment.

## FIRST CLAIM FOR RELIEF
### (Effluent Limit Violations at the Canton Facility)

39. The United States realleges and incorporates by reference Paragraphs 1–38.

40. On multiple occasions from May 2017 through March 2023, Republic Steel violated the Canton Permit's effluent limitations for Outfall 010 for oil and grease, selenium, zinc, lead, residual chlorine, total suspended solids, mercury, pH, and toxicity.

41. Each exceedance of a Canton Permit effluent limitation is a violation of the Canton Permit and of CWA Sections 301(a) and 309(a), 33 U.S.C. §§ 1311(a) and 1319(a).

42. Under CWA Section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Republic Steel is subject to a civil penalty of up to $66,712 per day for each of these violations occurring on or after November 3, 2015.

## SECOND CLAIM FOR RELIEF
### (Unauthorized Discharge of Pollutants from the Canton Facility)

43. The United States realleges and incorporates by reference Paragraphs 1–38.

44. CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants, except in compliance with the NPDES permitting provisions of 33 U.S.C. § 1342.

45. On at least the three days EPA inspected the Canton Facility in 2019, Republic Steel discharged water used to cool the electric arc furnace slag into a storm water catch basin that flows into the East Branch of Nimishillen Creek.

46. These discharges were not authorized by the Canton Permit.

47. These discharges constitute discharge of pollutants from a point source into navigable water without a permit authorizing such discharges under CWA Section 402, 33 U.S.C. § 1342, in violation of CWA Section 301, 33 U.S.C. § 1311.

11

48. Under CWA Section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Republic Steel is subject to a civil penalty of up to $66,712 per day for each of these violations occurring on or after November 3, 2015.

### THIRD CLAIM FOR RELIEF
### (Monitoring and Reporting Violations at the Canton Facility)

49. The United States realleges and incorporates by reference Paragraphs 1–38.

50. On multiple occasions before and during EPA's Canton Facility inspections in 2019, Republic Steel failed to accurately report and/or monitor 24-hour flow monitoring at Outfall 010 and Internal Monitoring Station 601, in violation of Canton Permit Parts I.A.5 and I.A.9.

51. During at least July, September, October, and November 2017 and January, February, April, and May 2019, Republic Steel failed to report to Ohio EPA exceedances of the copper preliminary effluent limit from Outfall 003, in violation of Canton Permit Part II.I.

52. Under CWA Section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Republic Steel is subject to a civil penalty of up to $66,712 per day for each of these violations occurring on or after November 3, 2015.

### FOURTH CLAIM FOR RELIEF
### (Operation and Maintenance Violations at the Canton Facility)

53. The United States realleges and incorporates by reference Paragraphs 1–38.

54. Canton Permit Part III.3.A. requires that, at all times, Republic Steel shall maintain in good working order and operate as efficiently as possible all treatment or control facilities or systems installed or used as necessary to achieve compliance with its permit.

55. For at least the three days EPA inspected the Canton Facility in 2019, Republic Steel failed to maintain its water quality control center in good working order and as efficiently as possible by allowing oil sheen and vegetation to contaminate and inhibit proper flow.

56. Under CWA Section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Republic Steel is subject to a civil penalty of up to $66,712 per day for each of these violations occurring on or after November 3, 2015.

## FIFTH CLAIM FOR RELIEF
### (SWPPP Violations for the Canton Facility)

57. The United States realleges and incorporates by reference Paragraphs 1–38.

58. Canton Permit Part VI requires that Republic Steel develop a SWPPP that meets all requirements specified by the Permit.

59. On at least the three days EPA inspected the Canton Facility, Republic Steel's SWPPP was missing or had deficient components required by the Canton Permit.

60. Under CWA Section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Republic Steel is subject to a civil penalty of up to $66,712 per day for each of these violations occurring on or after November 3, 2015.

## SIXTH CLAIM FOR RELIEF
### (Effluent Limit Violations at the Lorain Facility)

61. The United States realleges and incorporates by reference Paragraphs 1–38.

62. On multiple occasions from May 2017 through March 2023, Republic Steel violated the Lorain Permit's effluent limitations for Outfalls 002, 003, 005, and 604 for oil and grease, residual chlorine, mercury, and pH.

63. Each exceedance of a Lorain Permit effluent limitation is a violation of the Lorain Permit and of CWA Sections 301(a) and 309(a), 33 U.S.C. §§ 1311(a) and 1319(a).

64. Under CWA Section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Republic Steel is subject to a civil penalty of up to $66,712 per day for each violation occurring on or after November 3, 2015.

**SEVENTH CLAIM FOR RELIEF**
**(Unpermitted Discharges from the Lorain Facility)**

65. The United States realleges and incorporates by reference Paragraphs 1–38.

66. CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants, except in compliance with the NPDES permitting provisions of 33 U.S.C. § 1342.

67. During at least the April 2022 inspection, Republic Steel discharged pH and residual chlorine from an unidentified outfall to the Black River.

68. These discharges were not authorized by the Lorain Permit.

69. These discharges constitute discharge of pollutants from a point source into navigable water without a permit authorizing such discharges under CWA Section 402, 33 U.S.C. § 1342, in violation of CWA Section 301, 33 U.S.C. § 1311.

70. Under CWA Section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Republic Steel is subject to a civil penalty of up to $66,712 per day for each of these violations occurring on or after November 3, 2015.

**EIGHTH CLAIM FOR RELIEF**
**(Monitoring Violations at the Lorain Facility)**

71. The United States realleges and incorporates by reference Paragraphs 1–38.

72. Lorain Permit Part I.A. and II.G require 24-hour total flow monitoring and for composite samples to be collected as flow-proportioned composite samples, respectively.

73. For a period of time that included the days of EPA's April 2022 Lorain Facility inspections, Republic Steel failed to utilize any flow measurement device at Outfalls 002, 003,

005, and 605. Without a flow measurement device, Republic Steel was unable to collect flow-proportioned composite samples.

74. Under CWA Section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Republic Steel is subject to a civil penalty of up to $66,712 per day for each of these violations occurring on or after November 3, 2015.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff the United States of America respectfully requests that this Court:

1. Assess a civil penalty against Republic Steel in an amount up to $66,712 per day for each violation, with each violation on each day in which a violation occurs constituting a separate violation;

2. Award the United States its costs in this action; and

3. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

s/ JESSICA DURNEY
Digitally signed by JESSICA DURNEY
Date: 2024.01.26 16:49:55 -05'00'

JESSICA DURNEY
SAMANTHA RICCI
Trial Attorneys
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-4592 (Durney)
Phone (202) 514-3856 (Ricci)
Email: jessica.durney@usdoj.gov
Email: Samantha.ricci@usdoj.gov

OF COUNSEL:

JEFFREY CAHN
Associate Regional Counsel

CARLENE DOOLEY
Assistant Regional Counsel
U.S. Environmental Protection Agency


JACQUELINE CLARK
Attorney
U.S. Environmental Protection Agency
OECA – OCE – Water Enforcement Division